IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NICHELE FULMORE, H. RONALD REVELS III, and RONALD C. JONES, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 7:11-CV-18-F |
| UNITED PARCEL SERVICE, INC. and DOES 1-100, | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NICHELE FULMORE, H. RONALD REVELS III, and RONALD C. JONES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 7:11-CV-91-F |
| UNITED PARCEL SERVICE, INC., | ) ) | |
| Defendant. | ) | |

This case comes before the court on a motion (D.E. 33) by plaintiffs Nichele Fulmore ("Fulmore"), H. Ronald Revels III ("Revels"), and Ronald C. Jones ("Jones") (collectively "plaintiffs") to compel from defendant United Parcel Service ("defendant") further responses to eleven requests for production of documents and one interrogatory. The motion has been fully briefed[1] and referred to the undersigned for disposition pursuant to 28 U.S.C. §636(b)(1)(A) (*see* Minute Entry after D.E. 26). For the reasons set forth below, plaintiffs' motion will be allowed in part, denied in part, and denied as moot in part.

---

[1] In support of their motion, plaintiffs filed a memorandum (D.E. 33) with exhibits (D.E. 33-1 through 33-11). Defendant filed a memorandum (D.E. 34) with exhibits (D.E. 34-1 through 34-12) in opposition.

## BACKGROUND

Plaintiffs commenced this employment discrimination action in July of 2010. (*See* Compl. (D.E. 1-2)). They allege that they are employed as package car drivers for defendant at its facility in Lumberton, North Carolina. (*Id.* ¶ 5). Lester F. Grant, Jr. ("Grant") allegedly worked as the center manager at the Lumberton facility beginning in 2007 and ending in March 2010, and took adverse action against plaintiffs as their manager.[2] (*Id., e.g.,* ¶¶ 3, 10-13). Plaintiffs allege that they were discriminated against on the basis of race by being subjected to disparate discipline, job assignments, and training; false accusations of misconduct; terminations; and retaliation. (*See id., e.g.,* ¶¶ 11, 14, 16). Plaintiffs assert claims for wrongful termination in violation of North Carolina public policy (*id.* ¶¶ 19-23); wrongful harassment and termination in violation of 42 U.S.C. § 1981 (*id.* ¶¶ 24-28); and wrongful harassment and termination in violation of Title VII of the Civil Rights Act of 1964 (*id.* ¶¶ 29-33). Defendant generally denies the allegations in plaintiffs' complaint. (*See generally* Ans. (D.E. 5)).

On 16 December 2010, plaintiffs served on defendant their first set of interrogatories and requests for production (D.E. 33-2). On the day this case was removed to this court, 18 January 2011 (D.E. 1), defendant served its responses to plaintiffs' discovery requests (D.E. 33-3). Defendant thereafter served supplemental responses on 27 October 2011 (D.E. 33-4) and 28 November 2011 (D.E. 33-5).

At depositions in this case in early 2012, plaintiffs orally requested supplementation of certain discovery responses they contended were incomplete. The Scheduling Order in effect at that time provided that discovery would close on 6 April 2012 and required that dispositive motions be

---

[2] The complaint named Grant as a defendant, but the action was dismissed as to him without prejudice for failure to make service. (*See* 9 Mar. 2011 Order (D.E. 11)).

2

filed by 7 May 2012. (Sch. Order. (D.E. 28) ¶ 3 ). On 4 May 2012, the parties filed a joint motion to extend the deadline to file dispositive motions until 18 June 2012 and alerted the court to the outstanding discovery disputes between the parties that surfaced at depositions.[3] (Jt. Mot. (D.E. 30) ¶ 2). They requested (*id.* ¶ 6) a deadline of 25 May 2012 to file motions to compel. The court allowed the joint motion and issued an Amended Scheduling Order providing that "[a]ny motions to compel shall be filed by 21 May 2012." (Am. Sch. Ord. (D.E. 31) ¶ 1).

On 18 May 2012, plaintiffs wrote a letter to defendant (D.E. 33-6) specifically requesting supplementation of a number of defendant's discovery responses. Defendant's 21 May 2012 email in response indicated that supplementation in two of the nine identified categories, both relating to photographs taken as part of an investigation discussed at depositions, would be provided if located. (Def.'s 21 May 2012 Email (D.E. 33-7)). Defendant noted, however, that the other categories did not relate to the deposition-related discovery responses, but to earlier discovery responses to which plaintiffs had not objected and which were not within the scope of the joint motion for extension of time to file motions to compel. (*Id.*). Defendant stated that if plaintiffs wished to move the court for additional time to file motions to compel relating to earlier discovery responses it would not oppose a brief extension. (*Id.*).

Plaintiffs filed the original version of their motion to compel (D.E. 32) on the same date, 21 May 2012. They re-filed it the next day in its current form (D.E. 33) to address deficiencies in the presentation of the accompanying exhibits. (*See* Deficiency Notice dated 22 May 2012).

---

[3] The joint motion stated that "[d]uring certain of the witness depositions, there was testimony elicited that raised concerns among counsel that additional responsive documents may exist in the possession, custody or control of witnesses that were not provided to counsel, and therefore not produced in discovery." (Jt. Mot. ¶ 2). The joint motion further noted that "[c]ounsel for the parties are currently working together in good faith to investigate and resolve these issues, including by determining whether any supplemental production is necessary and, if so, whether it is necessary to reconvene any completed deposition based on such supplementation." (*Id.* ¶ 3).

3

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 Jun. 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery bears the burden of establishing the legitimacy of its objections. *Brey Corp. v. LQ Management, L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *4 (D. Md. 26 Jul. 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'") (quoting *Clere v. GC Services, L.P.*, No. 3:10-cv-00795, 2011 WL 2181176, at *2 (S.D. W.Va. 2011)). Rule 37 allows for the filing of

4

a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

## II.   TIMELINESS OF MOTION

Defendant's first objection to plaintiffs' motion is that it is untimely. Specifically, defendant contends that the extension allowed by the court for motions to compel was limited solely to motions to compel relating to the supplementation discussed at depositions and was not a blanket extension of time for any motion to compel relating to any purportedly insufficient discovery response served during the entire discovery period.

The Amended Scheduling Order, however, does not expressly so limit the scope of the motions to compel permitted. In addition, defendant's 21 May 2012 email indicated that defendant did not object to plaintiffs seeking additional time from the court to hear these disputes. For these reasons and in the interest of resolving the disputes on the merits, the court will consider the substantive objections plaintiffs assert to defendant's discovery repsonses.

## III.   SPECIFIC DISCOVERY REQUESTS AT ISSUE

### A. Requests Nos. 4 and 12[4]

Request No. 4[5] seeks all documents referring to plaintiffs, including personnel files, tape

---

[4] All the requests for production at issue are set out in D.E. 33-2. Defendant's responses are in D.E. 34-3. The requests and responses are identified herein solely by reference to their number without further reference to these docket entries.

[5] Request No. 4 seeks:

All documents pertaining to or referring to Plaintiff Fulmore, Plaintiff Revels and Plaintiff Jones, including but not limited to each person's personnel file, any notes, and any and all tape recordings, video recordings, records of time and attendance, payroll, work performance, bonuses, awards, evaluations and application.

(Req. No. 4).

5

recordings, and video recordings, and Request No. 12[6] seeks all documents relating to the July 2009 termination of Jones. The only documents which plaintiffs move to compel pursuant to these requests are photographs that were used during the conference leading to Jones' termination. Defendant has apparently already produced these photographs to plaintiffs. According, this portion of plaintiffs' motion to compel is DENIED as moot.

## B.    Requests No. 5, 6, and 8

Requests Nos. 5, 6, and 8 seek documents pertaining to employees of defendant other than plaintiffs. Specifically, Request No. 5[7] relates to Anthony Leake ("Leake"), an African-American package car driver who filed an Equal Employment Opportunity Commission charge of race discrimination against defendant in connection with his termination that year purportedly due to an avoidable automobile accident. Request No. 6[8] concerns Roger Lewis ("Lewis"), a Caucasian

---

[6] Request No. 12 states in full:

All documents related or potentially related to or potentially related to the July, 2009 termination of Plaintiff Jones including but not limited to: a) UPS' file on Jones termination; b) all driver workers compensation injury reports for the period 1/1/2008 to 1/1/2010; c) records of any discipline issued to drivers who filed workers compensation injury reports and were disciplined within one year of the reported injury, d) UPS notes on all meetings with Mr. Jones, including but not limited to disciplinary sessions, discussions of accidents, and counseling sessions.

(Req. No. 12).

[7] Request No. 5 seeks:

All documents pertaining to Anthony Leake and the termination of his employment in or about April, 2007, including bit [sic] not limited to a) all witness statements, photographs, calculations, b) any reports on accident causation; c) all documents in Mr. Leake's personnel file; d) any UPS notes on meetings with Mr. Leake, including but not limited to disciplinary sessions, discussions of accidents, and counseling sessions.

(Req. No. 5).

[8]Request No. 6 seeks:

All documents pertaining to Roger Lewis and the accident in which he was involved in or about 2008, including but not limited to a) all witness statements, photographs, calculations, b) any reports on accident causation; c) all documents in Mr. Lewis' personnel file; d) any UPS notes on meetings with

6

package car driver disciplined for an automobile accident in 2007, and Request No. 8[9] concerns

Eldon McDaniel ("McDaniel"), a Caucasian package car driver terminated in 2009 for alleged

misconduct. Plaintiffs contend that both Lewis and McDaniel are potential comparators for purposes

of their disparate treatment claims—that is, employees purportedly similarly situated to plaintiffs

who were treated less severely than plaintiffs. *See Mercer v. North Carolina Dep't of Trans.*, No.

5:09-CV-379-FL, 2010 WL 5890394, at *5 (E.D.N.C. 23 Dec. 2010) (memorandum &

recommendation), *adopted*, 2011 WL 780539 (28 Feb. 2011).

Defendant has already produced a number of documents relating to Leake's termination, but

objects to producing all documents in his personnel file. The court agrees with defendant that it need

not produce documents that are not relevant to this case but merely happen to be located in Leake's

personnel file, particularly because the information in an individual's personnel file may be of a

private or sensitive nature. *See Morris v. Lowe's Home Centers, Inc.*, No. 1:10CV388, 2012 WL

5347826, at *9 (M.D.N.C. 26 Oct. 2012) ("Generally, '[b]ecause personnel files contain very

sensitive private information about non-parties to th[e] litigation, th[e] Court must weigh the

significant privacy interests at stake against the need for the information contained in the personnel

files.'") (quoting *Halim v. Baltimore City Bd. of Sch. Comm'rs*, No. WMN–11–2265, 2012 WL

---

Mr. Lewis, including but not limited to disciplinary sessions, discussions or accidents, and counseling sessions.

(Req. No. 6).

[9]Request No. 8 reads:

All documents regarding the termination of Eldon McDaniels; including but not limited to: a) UPS' notes on all meetings with Mr. McDaniels, including disciplinary sessions, discussions of accidents, and counseling session, b) delivery records for Mr. McDaniels for the six months prior to his termination; c) all documents in Mr. McDaniels' personnel file; d) UPS notes on all meetings with Mr. McDaniels, including but not limited to disciplinary sessions, discussions of accidents, and counseling sessions.

(Req. No. 8).

2366338, at *2 (D. Md. 20 Jun. 2012)). While in some circumstances, production of an individual's entire personnel file is warranted, those circumstances have not been demonstrated here. Thus, plaintiffs' motion to compel further production in response to Request No. 5 is DENIED.

Defendant did not produce any documents pertaining to Lewis and McDaniel, and argues that these individuals did not engage in conduct substantially similar to that of plaintiffs such that they can appropriately be considered comparators. In determining whether two employees are similarly situated for comparator purposes, the court looks at all relevant factors, which include whether the individuals were disciplined by the same supervisor, the gravity of the offenses, and the seriousness of the punishments imposed. *Mercer*, 2010 WL 5890394, at *5; *see also Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (holding that to show that a plaintiff is similar to a comparator, a plaintiff must provide evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"), *cert. denied.*, 131 S. Ct. 1491 (2011). At summary judgment or trial, in order to establish a prima facie case of disparate discipline or pretext, plaintiffs may need to establish that any purported comparators meet this test. *Mercer*, 2010 WL 5890394, at *5.

However, the standard for discoverability is not coterminous with that of admissibility at summary judgment or trial and, indeed, is much broader. Fed. R. Civ. P. 26(b)(1); *Frank Betz Assoc., Inc. v. Jim Walter Homes, Inc.*, 226 F.R.D. 533, 536 (D.S.C. 2005) (recognizing that the standard for whether to allow a motion to compel discovery not limited by whether the information is admissible under the Rules of Evidence). "In a disparate treatment case, discovery should be 'reasonably related to the circumstances involved in the alleged discrimination and to a time frame

8

involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct.'" *Rodger v. Electronic Data Systems, Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994) (quoting *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618-19 (D.D.C. 1983)).

Here, while Lewis and McDaniel were not identically situated to plaintiffs, the court finds that plaintiffs have adequately established for purposes of discovery that these individuals are potential comparators. Defendant is willing to produce non-privileged documents related to any accidents involving Lewis in 2008, and McDaniel's termination and any related grievance, but objects to the production of these individuals' personnel files in their entirety.

The court agrees that the entire contents of Lewis's and McDaniel's personnel files need not be produced, but that all documents relating to any accidents involving Lewis in 2008 and McDaniel's termination and any related grievance are discoverable. Accordingly, the portion of plaintiffs' motion to compel relating to Requests Nos. 6 and 8 is ALLOWED IN PART. To the extent that defendant has not provided to plaintiffs all documents relating to any accidents involving Lewis in 2008, and McDaniel's termination and any related grievance, it shall serve them, together with supplemental responses to these production requests, no later than 17 January 2013.[10]

### C.    Request No. 7

Request No. 7[11] seeks documents about discipline given to defendant's Lumberton drivers

---

[10] None of the production ordered herein includes documents or information protected from disclosure by the attorney-client privilege or work product doctrine. Defendant must comply by 17 January 2013 with the requirements of Fed. R. Civ. P. 26(b)(5)(A) with respect to any documents or information withheld on such grounds.

[11] Request No. 7 seeks:

Your files and other documents pertaining to all accidents in which UPS Lumberton Drivers have been involved since 2005, including but not limited to a) all witness statements, photographs, calculations pertaining to each accident b) any reports on accident causation; c) all documents in the personnel files of the drivers involved in the accident; d) any UPS notes on meetings with the same drivers, including but not limited to disciplinary sessions, discussions of accidents, and counseling sessions, e) A record of any discipline issued to those drivers; and f) all insurance company files, and payments to the other

9

for involvement in accidents. Plaintiffs are willing to limit the request to those incidents where

Grant was involved. They argue that the treatment of employees involved in accidents will provide

valuable about potential comparators to Leake and conclusorily to them as well. Leake is not a

plaintiff in this case, however, and plaintiffs have not established how information relating to

discipline concerning all accidents is relevant to their own claims in this case where none of the

plaintiffs was disciplined for involvement in an accident. Accordingly, the portion of plaintiffs'

motion to compel relating to Request No. 7 is DENIED.

### D.  Requests Nos. 14 and 15

These requests seek documents regarding persons identified in Interrogatory No. 10[12].

Interrogatory No. 10[13] seeks the identity of each person terminated during Grant's tenure. Request

No. 14[14] seeks all documents pertaining to the termination of each such person, including any

---

parties involved.

(Req. No. 7).

[12] The interrogatories in issue and the answers to them are all set out in D.E. 34-2. The interrogatories are identified herein solely by reference to their number without further citation to this docket entry.

[13] Interrogatory No. 10 reads:

Identify each person whose employment was terminated by Lester Grant, or with Lester Grant's involvement, input, approval, or review, since Lester Grant began working for UPS. For each such person identified, state:
a.      Name;
b.      Position/Title
c.      Race;
d.      At which center he or she was employed at the time of the termination;
e.      Reasons for termination;
f.      Person or person(s) making the termination decision;
g.      Whether or not the employee grieved or [sic] her termination, and if so, the result of the grievance.

(Int. No. 10 (D.E. 34-2).

[14]Request No. 14 reads:

For each person identified in response to Interrogatory Number Ten, all documents pertaining to his or her termination, including but not limited to letters notifying of termination, any surveillance video or photos, any investigative materials, any performance documents, any grievances and decisions of

10

investigative materials and grievances, and Request No. 15[15] the personnel file of each such person.

Defendant limited its response to Interrogatory No. 10 to package car drivers in the Lumberton facility "who were issued official Notices of Discharge due to insubordination, falsification of company records, failure to follow required methods and procedures, and/or false reporting of an alleged on-the-job injury," as identified in a prior interrogatory answer (*i.e.,* Interrogatory No. 2). (Def.'s Resp. to Int. No. 10). Plaintiffs have not moved to compel a further answer to Interrogatory No. 10. In response to Request No. 14, defendant provided the notice of termination for the individuals it identified, but no documentation underlying the terminations. (Def.'s Resp. to Req. No. 14). It produced no documents in response to Request No. 15. (Def.'s Resp. to Req. No. 15).

Plaintiffs contend that, pursuant to Requests Nos. 14 and 15, they are entitled to the documents underlying the terminations of the persons identified as well as all other documents in the personnel files of these people. Defendant objects to producing the entire personnel files for these persons, but is willing to produce documents related to each of their terminations, including and the associated grievances.

The court agrees that plaintiffs are entitled to these underlying documents. The entire personnel files for the individuals identified are not discoverable due to the privacy concerns previously discussed.

Accordingly, the portion of plaintiffs' motion to compel relating to Request No. 14 is

---

grievances.

(Req. No. 14).

[15] Request No. 15 seeks "[f]or each person identified in response to Interrogatory Number Ten, his or her personnel file." (Req. No. 15).

11

ALLOWED. To the extent that defendant has not provided to plaintiffs the documents underlying the terminations of the persons it identified pursuant to Interrogatory No. 10, it shall serve them pursuant to Request No. 14, together with a supplemental response to this production request, no later than 17 January 2013. The motion is DENIED as to Request No. 15.

### E.      Requests Nos. 16 and 17

These requests seek documents regarding persons identified in Interrogatory No. 11. Interrogatory No. 11[16], as limited by plaintiffs, seeks the identity of each person issued a warning letter during Grant's tenure. Request No. 16[17] seeks all documents relating to each such warning letter and Request No. 17[18] the personnel file of each person issued such a letter.

In response to Interrogatory No. 11, defendant identified no persons. Instead, it stated that "it is not aware of any official warning letters not subsequently removed from the package car

---

[16] Interrogatory 11 reads:

Identify all UPS employees of the Lumberton center who have been issued warning letters since January 1, 2006. For each state his or her:
a.      Name;
b.      Position(s)/Title(s);
c.      Race;
d.      Reason(s) for warning;
e.      Person or person(s) making the decision to issue a warning letter;
f.      Whether or not the employee grieved his or her warning letter, and if so, the result of the grievance.

(Int. No. 11).

[17] Request No. 16 seeks:

For each person identified in response to Interrogatory Number Eleven, all documents pertaining to his or her warning letter, including but not limited to letters notifying of the warning letter, any surveillance video or photos, any investigative materials, any performance documents, any grievances and decisions of grievances.

(Request No. 16).

[18] Request No. 17 requests "[f]or each person identified in response to Interrogatory Number Eleven, his or her personnel file." (Request No. 17).

12

driver's disciplinary record as a result of the grievance process or otherwise that were issued between January 1, 2007, and December 31, 2009, to package car drivers in the Lumberton package center other than Plaintiffs due to violations of either the Professional Conduct Policy or the Workplace Violence Prevention Policy." (Def.'s Resp. to Int. No. 11). Plaintiffs have not moved to compel a more detailed response to Interrogatory No. 11. Plaintiffs are therefore not entitled to any further relief with respect to Requests Nos. 16 and 17. The portion of plaintiffs' motion seeking such relief is therefore DENIED.

**F.      Request No. 28**

Request No. 28[19], as limited by plaintiffs, seeks documents relating to drivers assigned to a particular driving route during Grant's tenure. Plaintiffs fail to show how this request is relevant to the claims or defenses in this case. Accordingly, this portion of plaintiffs' motion to compel is DENIED.

**G.      Interrogatory No. 3**

Plaintiffs move to compel a more complete response to Interrogatory No. 3[20], which seeks

---

[19] Request No. 28 seeks:

For all UPS drivers running the Lumberton 11-B route at any time in the period 1/1/2000 to the present, including but not limited to a) Steve Howell, and b) Mary Ledwell, c) Kent Fowler, d) Jimmy Jackson, all documents showing a) daily delivery records on the 11-B route, b) any OJS rides with them, c) operation reports d) any discipline issued to them, and e) all pay records for them while working on the 11-B route.

(Request No. 28).

[20] Interrogatory No. 3 reads:

Identify all persons employed by UPS as your Lumberton Center at any time since January 1, 2006. For each state his or her:

a.      Name;
b.      Position/Title;
c.      Race;
d.      Date of hire;

13

a race-based profile of defendant's workforce. Plaintiffs note their willingness to forego the salary information, but contend that the information sought in the remainder of this interrogatory is relevant.

The court agrees with defendant that the request is over broad as written and seeks information outside the period of Grant's tenure as manager of the Lumberton facility and for employees separated from employment regardless of the reason. Instead, the court finds that the information properly producible pursuant to this interrogatory, as defendant suggests, is a list of package car drivers employed in the Lumberton facility during Grant's tenure as manager and for each such employee the employee's name, race, date of hire, and date of separation from employment.

Accordingly, this portion of plaintiffs' motion to compel is ALLOWED IN PART. To the extent that defendant has not provided to plaintiffs the aforementioned information in response to Interrogatory no. 3, it shall serve a verified supplemental interrogatory answer containing the information no later than 17 January 2013.

## CONCLUSION

For the reasons and on the terms set forth above, plaintiffs' motion to compel is ALLOWED in PART, DENIED in PART, and DENIED AS MOOT in PART. Each side shall bear its own expenses incurred in connection with the motion on the grounds that the circumstances would make the award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

---

e.     Date of termination if applicable;
f.     Last salary or hourly rate of pay.

(Int. No. 3).

14

SO ORDERED, this 3rd day of January 2013.

James E. Gates
United States Magistrate Judge